NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>     v.                                                          )<br>)<br>DAVID DELLE DONNA and          )<br>ANNA DELLE DONNA,                  )<br>)<br>          Defendants.                         )<br>                                                              ) | Criminal No. 07-784 (HAA)<br><br>**OPINION AND ORDER<br>ON MOTION FOR<br>JUDGMENT OF ACQUITTAL** |

Christopher J. Christie, Esq.
United States Attorney
Richard E. Constable, III, Esq.
Thomas R. Calcagni, Esq.
Assistant United States Attorneys
UNITED STATES ATTORNEY'S OFFICE
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Attorneys for United States of America*

Ralph J. Lamparello, Esq.
CHASAN LEYNER & LAMPARELLO
300 Harmon Meadow Boulevard
Secaucus, New Jersey 07094-3621
*Attorneys for Defendant David Delle Donna*

Brian J. Neary, Esq.
LAW OFFICES OF BRIAN J. NEARY
Court Plaza South - East Wing
21 Main Street, Suite 305A
Hackensack, New Jersey 07601
*Attorneys for Defendant Anna Delle Donna*

**ACKERMAN, Senior District Judge:**

      This matter comes before the Court on the joint motion for judgment of acquittal (Doc.

No. 84) filed by Defendants David Delle Donna and Anna Delle Donna.  On April 29, 2008, after

1

a 22-day trial and nearly 5 days of deliberations, the jury returned a unanimous verdict of guilty on Counts Three, Four, and Five of the Superceding Indictment ("Indictment"), and not guilty on Counts One and Two. Defendants move for judgment of acquittal only as to Count Three: conspiracy to commit extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). For the following reasons, Defendants' motion will be DENIED.

*Analysis*

I.      **Standards for Motion for Judgment of Acquittal**

A motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) "obliges a district court to 'review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006) (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). This Court must determine "whether, viewing the evidence most favorably to the government, there is *substantial evidence* to support the jury's guilty verdict." *United States v. Idowu*, 157 F.3d 265, 268 (3d Cir. 1998) (quoting *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988)) (emphasis added). The Government may sustain its burden "entirely through circumstantial evidence." *Bobb*, 471 F.3d at 494. This Court must uphold the jury's verdict "if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses." *United States v. Rosario*, 118 F.3d 160, 163 (3d Cir. 1997) (quoting *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991)). A finding of insufficiency of evidence "should 'be confined to cases where the prosecution's failure is clear.'" *Smith*, 294

F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).  Therefore, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden."  *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992).

"Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury."  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005); *see also United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985) (holding that in determining sufficiency of the evidence, a district court "cannot and should not weigh the evidence" and cannot make credibility determinations).  This Court "must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences."  *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992).  Indeed, "all reasonable inferences must be drawn and all credibility issues resolved in the government's favor."  *United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987).

In assessing the sufficiency of the evidence, this Court must consider "the totality of the circumstances," *Leon*, 739 F.2d at 891, and "must examine all of the evidence presented by the Government taken as a whole, and not consider pieces of the evidence in isolation," *United States v. Picciotti*, 40 F. Supp. 2d 242, 245 (D.N.J. 1999).

**II.  Extortion under Color of Official Right**

Defendants contend that the evidence adduced at trial was insufficient to support their

convictions on the Hobbs Act conspiracy charge.[1]  The Hobbs Act, 18 U.S.C. § 1951(a), provides in relevant part that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion or . . . conspires so to do" commits a federal crime.  The statute defines "extortion" in relevant part as "the obtaining of property from another, with his consent, . . . under color of official right." 18 U.S.C. § 1951(b)(2).  To meet its burden, the Government had to prove at trial, beyond a reasonable doubt, the elements of both conspiracy and extortion.  As this Court instructed the jury, the elements of conspiracy are: (1) that the conspiracy described in the Indictment was formed and existed at or about the time alleged in the Indictment; and (2) that each Defendant knowingly and willfully participated in that conspiracy.  The elements of Hobbs Act extortion, as this Court charged the jury without objection, include: (1) each Defendant knowingly and willfully obtained money or property from another, with that person's consent; (2) by means of extortion under color of official right; and (3) that in doing so, interstate commerce was either actually or potentially obstructed, delayed, or affected in any way or degree.

The Indictment charged Defendants with extortion with regard to two types of "money or property" willfully obtained from Luisa Medrano: 1) campaign contributions to campaign committees affiliated with Guttenberg Mayor David Delle Donna; and 2) other "gifts" – cash, goods, and services – provided to Defendants.  Defendants focus exclusively on whether the evidence showed that they obtained money or property by "extortion under color of official right."  Defendants argue that "the record is devoid of any credible evidence to establish the

---

[1]Notably, Defendants do not challenge the sufficiency of the evidence with respect to their unanimous guilty convictions on Counts Four and Five of the Indictment, which charged them with filing materially false federal income tax returns, in violation of 26 U.S.C. § 7206(1).

4

existence of an explicit or implicit agreement between Luisa Medrano, Anna Delle Donna and David Delle Donna for Luisa to provide cash and gifts in exchange for any official action on the part of either Anna Delle Donna or David Delle Donna." (Defs'. Br. at 6.)

The agreement or promise required to show "extortion under color of official right" under the Hobbs Act varies depending on the nature of the money or property at issue. In *McCormick v. United States*, the Supreme Court held that political campaign contributions are covered under the Hobbs Act as taken under color of official right "only if the payments are made in return for an *explicit* promise or undertaking by the official to perform or not to perform an official act." 500 U.S. 257, 273 (1991) (emphasis added). Only in this situation, according to the Supreme Court, does "the official assert[] that his official conduct will be controlled by the terms of the promise or undertaking." *Id.* In common parlance, this means a promise of a *quid pro quo*. As described by the Third Circuit, *McCormick* requires an "overt *quid pro quo*" as a "necessary proof in the context of campaign contributions." *United States v. Antico*, 275 F.3d 245, 257 (3d Cir. 2001). Thus, to prove extortion based on campaign contributions, the Government must show that Defendants made an explicit promise of a *quid pro quo*.

As Defendants concede in their moving papers, an *explicit* promise is not required to prove extortion under color of official right with regard to non-campaign contributions such as the gifts alleged here. In the non-campaign contribution context, according to our Court of Appeals, "[t]he *quid pro quo* can be *implicit*, that is, a conviction can occur if the Government shows that [the defendant] accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity 'under color of official right.'" *Antico*, 275 F.3d at 257 (emphasis added). The Third Circuit reasoned, in

5

reliance on Justice Kennedy's concurrence in *Evans v. United States*, that "the official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *United States v. Bradley*, 173 F.3d 225, 231 (3d Cir. 1999) (quoting *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring)).

The Government need only prove a *promise*; actual completion of the *quid pro quo* is not required. As the Supreme Court held in *Evans*, the Hobbs Act offense "is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense." 504 U.S. at 268. The Third Circuit has similarly explained that "no 'official act' (i.e., no '*quo*') need be proved to convict under the Hobbs Act. Nonetheless, the official must know that the payment – the '*quid*' – was made in return for official acts." *Antico*, 275 F.3d at 257.

The Government may establish extortion under a "stream of benefits" theory. "[T]he government need not prove that each gift was provided with the intent to prompt a specific official act." *United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007).[2] The Government may satisfy the implicit *quid pro quo* requirement by showing that payments were "'made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.'" *Id.* (quoting *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998)). In other words, the Government need only show a "'course of conduct of favors and gifts flowing to a public official,'" and that the

---

[2]*Kemp* involved a charge of honest services mail fraud, and Defendants here were acquitted on the mail fraud counts of the Indictment. However, *Kemp* provides critical guidance for application of the Hobbs Act, as honest services mail fraud and extortion implicate similar theories of bribery. *See Kemp*, 500 F.3d at 284 n.15 (applying Hobbs Act case because "it is no less applicable in the present context").

official accepted these gifts in exchange for one or more official acts. *Id.* (quoting *Jennings*, 160 F.3d at 1014). The Government need not prove that the public official "induced" the stream of gifts, or that the public official "acted or refrained from acting as a result of payments made." *United States v. Urban*, 404 F.3d 754, 768 (3d Cir. 2005). Rather, the Government must only prove that the public official knew "'that the payment was made in return for official acts.'" *Id.* (quoting *Evans*, 504 U.S. at 268).

### III. The Government Presented Sufficient Evidence to Allow a Reasonable Trier of Fact to Convict Defendants Beyond a Reasonable Doubt

To support a conviction under Count Three of the Indictment, the Government must have shown either an explicit *quid pro quo* with regard to campaign contributions or an implicit *quid pro quo* with regard to a stream of gifts. Through the testimony of Luisa Medrano, Eduviges ("Duvi") Medrano, Javier Inclan, Geraldine Credidio, and others, the Government presented evidence of a steady stream of gifts and other benefits from Luisa Medrano to David Delle Donna, the Mayor of Guttenberg, and Anna Delle Donna, the Mayor's wife and a member of the Guttenberg Planning Board. Such gifts and benefits, accepted by Defendants from Luisa Medrano (often through her sister Duvi) at various times between 2002 and 2006, included, among other items: department store gift cards, jewelry, cash for a medical procedure, the installation of a closet in Defendants' garage, the purchase of a dog and related accessories, and cash for gambling. During this approximate time period, viewing the evidence in the light most favorable to the Government, Luisa Medrano also made cash contributions to campaign committees affiliated with David Delle Donna and provided employees and goods for campaign-

related work. The evidence establishes that the total value of the cash and gifts provided to Defendants was substantial, amounting to tens of thousands of dollars.

In their brief, Defendants do not discuss the sufficiency of evidence regarding the actual cash, gifts, and benefits provided.[3] Rather, they devote the attack on their convictions on Count Three to the alleged lack of an explicit or implicit agreement by Defendants to accept these items with the understanding that they were given in exchange for official action (or inaction) in Luisa Medrano's favor. This Court has carefully reviewed the entire trial record. *See Leon*, 739 F.2d at 891 (instructing courts assessing sufficiency of evidence to consider the "totality of the circumstances"); *Picciotti*, 40 F. Supp. 2d at 245 (examining "all of the evidence presented by the Government taken as a whole"). Reading the record in the light most favorable to the Government, as this Court must on a Rule 29 motion, this Court finds substantial evidence from which a reasonable jury could conclude that both Defendants "accepted payments or other consideration with the implied understanding that [they] would perform or not perform an act in [their] official capacity 'under color of official right.'" *Antico*, 275 F.3d at 257.[4]

Luisa Medrano repeatedly testified that she gave gifts and other benefits to Anna Delle Donna so that the Delle Donnas would help her with issues concerning her bars and business

---

[3]Defendants state in their brief that "the evidence certainly supports the contention that several gifts as listed in the indictment were given to Anna Delle Donna and her daughter." (Defs.' Br. at 1.) The Government's evidence also shows that Duvi Medrano gave David Delle Donna directly, on behalf of the Medrano family, a $500 Macy's gift card. (Tr. 4/8/08, 79:4-21.) Duvi Medrano testified that "Luisa and I always thought he never knew about the gifts. That is why we gave it to him directly so he knew it was coming from us." (*Id.* at 79:13-15.)

[4]The following discussion of the evidence adduced at trial is not exhaustive. This Court has examined the entire record and has not merely "consider[ed] pieces of the evidence in isolation." *Picciotti*, 40 F. Supp. 2d at 245.

interests. (*See, e.g.*, Tr. 3/27/08, 40:23-41:14; Tr. 3/27/08, 74:17-18; Tr. 3/27/08, 85:23; Tr. 4/1/08, 18:24-19:4; Tr. 4/1/08, 59:20-60:5; Tr. 4/2/08, 29:14-15; Tr. 4/2/08, 31:6-8; 4/3/08, 11:8-11, 14-15; Tr. 4/3/08, 31:6-8.) For example, she stated at trial that "I was helping her and she was helping me in my bars, with my license, and with the permits that I needed from City Hall, that it would be easier for me . . . because she was the wife of the mayor and she had the power to help me." (Tr. 4/1/08, 18:24-19:4.) Luisa Medrano also testified that Anna Delle Donna represented to her that she would help her in various ways, including speaking with David Delle Donna and other officials. (*See, e.g.*, Tr. 3/28/08, 27:14-17; Tr. 3/31/08, 34:9-13; Tr. 3/31/08, 43:10-14; Tr. 3/31/08, 46:18-22; Tr. 3/31/08, 48:8-15; Tr. 3/31/08, 54:16-24.)

Defendants depict the evidence presented at trial as establishing that Luisa Medrano and her sister Duvi "began ingratiating themselves with Anna Delle Donna" and "showering her with gifts possessing a general hope that [Luisa Medrano's] business in Guttenberg would run smoothly." (Defs.' Br. at 9, 12.) Defendants stress that Anna Delle Donna neither "pressured them" nor "conditioned her help on their generosity." (*Id.* at 12.) However, as the Third Circuit made clear in *Urban*, "the government need not prove that the public official induced the making of the payment" to prove extortion under color of official right. 404 F.3d at 768. Evidence of coercion could support the existence of an *explicit* understanding, but in the context of non-campaign contributions, only an implicit agreement need be shown. While proof of coercion is relevant to consideration of an implicit *quid pro quo*, requiring such evidence would frustrate the law's effect. *See Bradley*, 173 F.3d at 232 (adopting implicit *quid pro quo* theory because "in our view, as Justice Kennedy explained, a conclusion that in a Hobbs Act case the government has to demonstrate that the public official made an express promise to perform a particular act

9

and that 'knowing winks and nods' are not sufficient would frustrate the act's effect") (quoting *Evans*, 504 U.S. at 274) (Kennedy, J., concurring)).  In any event, substantial evidence from the testimony of Luisa Medrano and Duvi Medrano suggests that they understood that Anna Delle Donna requested some of the gifts and services from the Medranos, including the installation of a closet in the garage of the Delle Donnas' home, money for a dog, and money for a medical procedure.  (*See, e.g.*, Tr. 3/27/08, 102:6-11 (Luisa/dog); Tr. 3/27/08, 99:5-10; (Luisa/closet); Tr. 4/3/08; 94:14-16 (Luisa/closet); Tr. 4/8/08; 71:10-25 (Duvi/medical procedure).)

      The testimony of Duvi Medrano, considered together with the testimony of her sister and others, provided further evidence from which a reasonable jury could conclude that Luisa Medrano and Defendants had an implicit understanding.  Duvi Medrano stated that "Luisa, every time she gave money to Anna or every time she gave a gift to Anna or anything to Anna, it always meant business; meaning if we were nice to Anna, the bar would be okay. It was always that. It was always that. It was business."  (Tr. 4/8/08, 66:6-10; *see also, e.g.*, Tr. 4/8/08, 73:16-24; Tr. 4/8/08, 109:5-14.)  Duvi Medrano also stated that Anna Delle Donna assured her and her sister not to worry about winning town approvals and suffering harsh punishment from the town for Alcohol Beverage Commission ("ABC") matters and code violations.  (*See, e.g.*, Tr. 4/8/08; 82:8-15, 83:8-17, 89:25-90:2, 104:10-14.)

      Defendants are correct that Duvi Medrano's testimony does not support the notion of an *explicit* agreement by Defendants.  For example, Duvi Medrano was asked on cross-examination, "did you ever tell her, Anna, the only reason I am doing all these things was because I want you to give us favors at the bar?" and she answered, "No, sir."  (Tr. 4/9/08, 61:10-13.)  However, a reasonable jury could find based on Duvi Medrano's testimony that an implicit understanding

had been reached: that Luisa Medrano gave Defendants gifts in exchange for official action on her behalf, and that Defendants accepted these gifts knowing that they were given for this reason. Duvi Medrano testified:

> There was my friendship with Anna Delle Donna, my personal friendship with Anna Delle Donna. To me she was a friend, and I was and she was. We were both friends. *When it came to Luisa Medrano, it was business, and she knew about it.* She knew about . . . She knew about it. There were two sides to the friendship. If you ask me was she my friend, yes, she was my friend. Was I comfortable going to her to ask her for help and ask David for help for my son? I felt comfortable in doing that, sir. *Now, when it came to Luisa, that was something different. Anna knew that Luisa, it was business.*

(Tr. 4/9/08, 61:19-62:8 (emphases added); *see also* Tr. 4/9/08, 62:23, 81:15-17, 81:24-25, 106:12-14.)

According to Duvi Medrano, Anna Delle Donna "knew when I meant business, she knew it was business." (Tr. 4/9/08, 108:14-15.) Based on the entire record, including the actions taken both by David and Anna Delle Donna discussed below, a reasonable jury could infer that Anna Delle Donna shared this understanding with her husband. A reasonable jury could conclude from Duvi Medrano's testimony and other evidence that Defendants "had knowledge that they were receiving the . . . payments in return for favorable exercise of governmental authority." *Urban*, 404 F.3d at 768; *see also id.* at 769 (finding sufficient evidence that plumbing inspectors knew that "plumbers' payments were being made for an improper purpose, i.e. the influencing of their governmental authority," based on evidence regarding training of inspectors and inspectors' surreptitious receipt of cash). Here, the jury reasonably concluded that both Anna and David Delle Donna knew that the cash and gifts provided by Luisa Medrano were "business," i.e., in exchange for favorable action by or treatment from Planning Board Member Anna Delle Donna

11

and Mayor David Delle Donna.  Defendants contend that "[t]here was no testimony whatsoever that there were 'winks and nods' between them regarding the true meaning of the gifts Medrano gave."  (Defs.' Br. at 12.)  While Duvi Medrano did not employ these exact words, a reasonable jury could infer and conclude, based in part on her testimony, that there were metaphorical "winks and nods" between Defendants and Luisa Medrano.

Renewing their arguments previously made before the jury, Defendants contend that they did not take or withhold any official action to benefit Luisa Medrano.  With regard to certain disputed circumstances, the evidence indeed may be viewed to support their contention that, for example, David Delle Donna recused himself from certain ABC decisions affecting Luisa Medrano and her bar.  But a Hobbs Act violation does not require the actual completion of any *quid pro quo*.  The Government need not prove that the Defendants "acted or refrained from acting as a result of payments made." *Urban*, 404 F.3d at 768.  The harm resulting from extortion under color of official right stems not just from any "*quo*," but from the very abuse of public office occasioned by a public official's acceptance of gifts with the understanding that they were given in return for official acts.  "The Hobbs Act simply states that *use of one's office to obtain money or services not due is extortion*: 'the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Antico*, 275 F.3d at 257-58 (quoting *Evans*, 504 U.S. at 268) (emphasis added).  Nonetheless, the "facts and circumstances surrounding the 'payments' or gifts and whether any official action was taken or withheld" (Defs.' Br. at 8-9,) are *relevant* to the determination of whether an implicit understanding existed.

Various witnesses – including Robert K. Rogers, Sr., Luisa Medrano, Duvi Medrano,

12

Javier Inclan, Brian P. Ribarro, and Geraldine Credidio – testified that Defendants actually took (or withheld) official action to benefit Luisa Medrano.  For example, Rogers, the former Guttenberg code enforcement officer, testified over the course of several days that David Delle Donna asked him to "look into" or "take care of" various tickets issued to Luisa Medrano.  (*See, e.g.*, Tr. 3/24/08, 134:23-135:3; Tr. 3/24/08, 161:4-7; Tr. 3/25/08, 23:4-16; Tr. 3/26/08, 16:21-23.)  Former Guttenberg Town Council member Inclan testified that David Delle Donna discussed with him Luisa Medrano's planned expansion of her Guttenberg bar, Puerto de la Union II, and asked Inclan for his support.  (Tr. 4/4/08, 97:7-16.)  According to Inclan, David Delle Donna also discussed Luisa Medrano's various code violations with him and informed Inclan that he, the Mayor, "had to take care of those violations."  (Tr. 4/4/08, 106:2-4.)[5]  Inclan also testified that Anna Delle Donna asked him, in her husband's presence, to be lenient with regard to an ABC issue involving Luisa Medrano's bar.  (Tr. 4/4/08, 97:25-98:5.)  Ribarro, the former construction official and zoning officer for Guttenberg, testified that Anna Delle Donna and Luisa Medrano met with him about a planned construction project at Luisa Medrano's property.  (*See, e.g.*, Tr. 4/9/08, 117:4-6.)  He further informed the jury that David Delle Donna also spoke to him that same week regarding the issuance of a permit for this project (Tr. 4/9/08, 121:24-122:18), and that such personal contact with him by both Delle Donnas regarding the same permit application was unprecedented (Tr. 4/9/08, 123:9-23.)  Ribarro also stated that David Delle Donna subsequently asked him about the status of inspections for this project, and

---

[5]Inclan further testified that David Delle Donna told him that "I know that if anything is going to take me down, meaning end my political career, it would be this." (Tr. 4/4/08, 106:14-16.) Inclan understood "this" to mean David Delle Donna's "relationship and – and these favors that he was doing for Luisa." (*Id.* at 106:18-19.)

that Mr. Delle Donna did not make such inquiries for any other permit applicant. (Tr. 4/9/08, 125:20-126:24.) Credidio, Ribarro's assistant and Planning Board secretary, testified that Anna Delle Donna pressured her, in Ribarro's absence, to issue a permit for Luisa Medrano. (Tr. 4/10/08, 50:17-51:14, 96:24-97:13.)[6]

Defendants contested the import and credibility of the testimony and evidence regarding these alleged actions by way of vigorous cross-examination at trial. A reasonable jury certainly could have disbelieved some or all of the testimony, or interpreted the evidence in a different way. But at this stage, this Court may ask only whether a "reasonable jury *believing the government's evidence*" could possibly have convicted Defendants beyond a reasonable doubt. *Rosario*, 118 F.3d at 163 (quoting *Salmon*, 944 F.2d at 1113) (emphasis added). Resolving all credibility issues in the Government's favor, *Scanzello*, 832 F.2d at 21, the evidence presented supports the jury's verdict.[7] The above evidence regarding Defendants' conduct reinforces the substantial evidence regarding the implicit understanding of Luisa Medrano and of both Anna and David Delle Donna. A reasonable jury, for example, could have relied upon the testimony

---

[6]Defendants contend that "[c]ritically lacking here is any testimony, from Medrano or Riba[rro] that the Delle Donna[s] were directing anyone or exerting any influence over the situation whatsoever." (Defs.' Br. at 11.) Yet they concede in a footnote, without further comment, that Credidio "testified that Anna Delle Donna was pushing her to complete the permit paperwork." (*Id.* at 11 n.3.) While the Hobbs Act does not *require* any completion of a *quid pro quo*, a reasonable jury could have read the trial testimony as showing that some influence was indeed asserted on Luisa Medrano's behalf.

[7]In their brief, Defendants state only that David Delle Donna told Rogers to "look into" the tickets. (Defs.' Br. at 11.) Defendants spent considerable time at trial attacking Rogers's credibility, and disbelieve his testimony that Mr. Delle Donna sometimes told Rogers to "take care of" the tickets. This Court, however, may not assess credibility or weigh evidence at this juncture. This Court finds that a reasonable jury, believing the Government's evidence, could have found that David Delle Donna took action with Rogers on Luisa Medrano's behalf.

regarding the actions taken by David Delle Donna in particular as circumstantial evidence supporting a reasonable inference and conclusion, based on the entire record, that David Delle Donna had an implicit understanding that Luisa Medrano's gifts to himself and his wife were accepted in exchange for official action.[8]

Limiting their analysis to the specific gifts referenced in the Indictment, Defendants observe that these gifts "are not temporally connected in any way with the alleged 'official actions' taken with respect to Luisa Medrano." (Defs.' Br. at 13.) Duvi Medrano indeed testified to the lack of temporal relationship, stating that "[t]here were gifts that were given to her for – it is not like I said. Okay. I am going to give you this gift for this and I am going to give you that gift for that. It wasn't like that." (Tr. 4/8/08, 113:12-15.) However, not only did the Government present substantial evidence of gifts and other benefits not specifically identified in the Indictment, but even Defendants concede that under a "stream of benefits" theory, an explicit link – temporal or otherwise – between the gifts and official action is not needed. (Defs.' Br. at 5-6.) Rather, the Government need only have proven that the gifts were "'made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.'" *Kemp*, 500 F.3d at 282 (quoting *Jennings*, 160 F.3d at 1014). The Government made such a showing here.

A jury of 12 persons unanimously concluded that Defendants were guilty beyond a

---

[8]Contrary to Defendants' urging, David Delle Donna's recusal from some proceedings regarding Luisa Medrano does not "demonstrate the *lack* of an agreement to 'help Medrano out on as needed basis' in exchange for gifts as the government argued at trial." (Defs.' Br. at 10 (emphasis in original).) A reasonable jury could not have found an implicit agreement based on David Delle Donna's recusal *alone*. However, a reasonable jury could have concluded, based on substantial evidence in the entire record aside from the recusal, that David Delle Donna formed an implicit agreement with his wife and Luisa Medrano.

reasonable doubt of conspiracy to commit extortion under color of official right, and the evidence presented at trial supports this verdict.[9] Considering the entire case presented at trial in the light most favorable to the Government, Defendants have not met their "heavy burden" to establish insufficiency of the evidence with regard to their Hobbs Act conspiracy convictions. *Casper*, 856 F.2d at 421. A reasonable jury could have found that the Government proved each and every element of Count Three of the Indictment beyond a reasonable doubt. With regard to the specific element upon which Defendants focus – that Defendants accepted gifts from Luisa Medrano with the understanding that they would take official action in exchange for those gifts – substantial evidence exists such that a reasonable jury could have found an implicit understanding. Our Circuit has counseled that a finding of insufficiency of evidence should be limited to cases "where the prosecution's failure is clear." *Leon*, 739 F.2d at 891. No such failure occurred here. This Court will decline to enter a judgment of acquittal on Count Three of the Indictment.[10]

---

[9]This Court reiterates that the same jury, after nearly five days of deliberations, unanimously concluded that Defendants were not guilty of the charges in Counts One and Two.

[10]Defendants make a broad argument concerning the alleged scope of the Hobbs Act:
> In reality, the practice of using hospitality, including lavish hospitality, to cultivate business or political relationships is longstanding and pervasive. It may well be that all such hospitality should be flatly prohibited by law, but if the parties had the limited intent to cultivate friendship and not to peddle influence, the federal statutes involving bribery and honest services fraud would not be violated.

(Defs.' Br. at 13 (citing *United States v. Warner*, No. 02-506, 2005 WL 2367769 (N.D. Ill. Sept. 23, 2005)).) Even if this were an accurate statement of the law, this Court finds that substantial evidence at trial, viewed in the light most favorable to the Government, shows that the parties had the intent to peddle influence: it was "business."

Examination of *Warner*, from which Defendants quoted the above passage, nonetheless proves instructive. In *Warner*, former Illinois Governor George H. Ryan, Sr. was charged with various corruption-related violations, including honest services mail fraud, but *not* with violation of the Hobbs Act. Defendants derived the above passage from a parenthetical to the *Warner*

16

## IV.     The Interests of Justice Do Not Require a New Trial

Defendants' brief refers only to their request for a judgment of acquittal, and is titled as a memorandum of law in support of their "motion for judgment of acquittal." However, in their notice of motion, Defendants call their motion, perhaps inadvertently, one for "a new trial and a judgment of acquittal," and appear to seek a new trial as an alternative to a judgment of acquittal. Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This Court may only order a new trial if the "jury's verdict is contrary to the weight of the evidence" and if "'there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos,* 20 F.3d 280, 285 (7th Cir. 1994)). As opposed to an insufficiency of the evidence claim, under Rule 33 a court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Id.*

To the extent that Defendants seek a new trial, this Court concludes that the interests of

---

court's citation to a First Circuit case, *United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996). The First Circuit in *Sawyer* indeed stated the above words. However, the *Warner* court in the Northern District of Illinois *rejected* this quoted passage, citing, among other cases, *Urban* and *Antico* from the Third Circuit. The court stated, in language omitted by Defendants:
> The court concludes, however, that the law does not require the government to identify a specific contract, perquisite, or other government benefit given in exchange for each particular gift, so long as the evidence establishes that Ryan accepted gifts or other consideration with the understanding that he would perform or not perform acts in his official capacity in return.

*Warner*, 2005 WL 2367769, at *4 (citing, *inter alia*, *McCormick*, 500 U.S. at 268-69; *Urban*, 404 F.3d at 768; and *Antico*, 275 F.3d at 257-58). This standard comports with the law in our Circuit, and the Government adduced sufficient evidence to meet this standard here.

justice do not warrant one.  "Motions for a new trial based on the weight of the evidence are not favored.  Such motions are to be granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).  This case is not exceptional.  Based on this Court's thorough review of the record, the evidence presented at trial supports the jury's unanimous verdict, and no miscarriage of justice has occurred.

### *Conclusion and Order*

For the foregoing reasons, Defendants' motion for judgment of acquittal (Doc. No. 84) is hereby DENIED.


Dated:  August 12, 2008
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.